THEODORE PARKER, III, ESQ.
Nevada Bar No. 4716
**PARKER, NELSON & ASSOCIATES, CHTD.**
2460 Professional Court, Suite 200
Las Vegas, Nevada 89128
Telephone: (702) 868-8000
Facsimile: (702) 868-8001
Email: tparker@parkernelson.com

CLARENCE E. GAMBLE, ESQ.
Nevada Bar No. 4268
**RAMOS LAW**
10190 Bannock Street, Suite 200
Northglenn, Colorado 80260
Telephone: (303) 733-6353
Facsimile: (303) 865-5666
Email: clarence@ramoslaw.com

*Attorney for Plaintiffs,*
*Yamika Arias and Jonel Hamlett,*
*individually, and on behalf of their son,*
*Ser Maddox Hamlett*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| YAMIKA ARIAS and JONEL HAMLETT, individually, and on behalf of their son, SER MADDOX HAMLETT,<br><br>Plaintiffs,<br><br>v.<br><br>LIFE TIME, INC., a Delaware corporation; DOES I through X; and ROE CORPORATIONS I through X; inclusive,<br><br>Defendants. | Case No. 2:25-cv-00299-GMN-BNW<br><br>**AMENDED COMPLAINT** |

COME NOW, Plaintiffs, Yamika Arias and Jonel Hamlett, individually, and on behalf of their son, Ser Maddox Hamlett (a minor) (hereinafter collectively referred to as the "Plaintiffs"), by and through their attorneys of record, THEODORE PARKER, III, ESQ. of the law firm of PARKER, NELSON & ASSOCIATES, CHTD., and **CLARENCE E. GAMBLE, ESQ.**, and hereby file their

**Amended** Complaint[1] and allege as their causes of action against Life Time, Inc. ("Life Time") as follows:

## PARTIES

1.      Plaintiffs are a family residing in Nevada. Ms. Arias and Mr. Hamlett have a minor son, Ser Maddox Hamlett ("Ser"). **Ser is an African-American male.**

2.      On or about July 19, 2023, an employee of Life Time called Ser a "monkey" and claimed to "own" Ser; additionally, Life Time's employee indicated that the employee's family previously owned slaves ("Subject Incident").

3.      Incorporated in Delaware, Life Time is a national chain of health clubs in the United States and Canada. Life Time is publicly traded. Life Time does business in the State of Nevada, and thus, has availed itself to the laws of the State of Nevada. According to its latest Form 10-Q, filed with the Securities and Exchange Commission, Life Time's headquarters are located at 2902 Corporate Place, Chanhassen, Minnesota.

4.      Plaintiffs do not know the true names of the individuals, corporations, partnerships and entities sued and identified in fictitious names as DOES I through X and ROE CORPORATIONS I through X. Plaintiffs allege that such fictitious Defendants claim an interest, and/or are responsible for damages suffered by Plaintiffs, as more fully discussed under the claims for relief set forth below. Plaintiffs will request leave of this Honorable Court to amend this Complaint to show the true names and capacities of each of the fictitious Defendants when Plaintiff discovers such information.

5.      Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, the defendants named in this action, as well as the fictitiously named defendants, and each of them, were agents and employees of the remaining defendants, and in doing the things hereinafter complained of, were acting within the course and scope of such agency and/or employment and with the knowledge and consent of the remaining defendants.

## JURISDICTION AND VENUE

6.      This Court has **subject matter** jurisdiction of this action and over the parties hereto **as follows:**

---

[1] Changes to the complaint are made in **bold.**

    **a.  As the parties are alleged to be citizens of different states and the amount in controversy exceeds $75,000.00, the Court has subject matter jurisdiction pursuant to 28 U.S. C. § 1332;**

    **b.  As this claim involves a federal question, to wit: claim based on 42 U.S.C. § 1981, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331;**

    **c.  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' state law claims as they form part of the same case or controversy.**

7. **Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this Court because a substantial part of the events/omissions giving rise to the claims alleged occurred in this judicial district.**

### FACTS

8. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

9. On or about July 19, 2023, the Subject Incident occurred at Life Time's Summerlin location, located at 10721 W. Charleston Blvd., Las Vegas, Nevada, 89135.

10. While attending summer camp, an employee of Life Time ("the Employee" or "employee of Life Time") **used racially hostile language against** Ser a **by calling him a** "monkey" and claimed to "own" Ser. Life Time's employee also indicated that the employee's family previously owned slaves. **But for Ser's race, African-American, the Employee would not have used such language.**

11. At the time of the Subject Incident, and during all relevant times, Life Time employed and provided wages to the Employee.

12. At the time of the Subject Incident, and during all relevant times, the Employee was working within the scope of his employment with Life Time, **and further, that the only way the Employee's was able to racially discriminate against Ser was because of his agency relationship with Life Time.**

13. Further, Life Time benefited from its health-club enterprise, and Life Time's hiring decisions in relation to such enterprise caused Plaintiffs' injuries.

14. Life Time is responsible for Plaintiffs' harm because Life Time's employee was acting within the scope of their employment when the Subject Incident occurred; **and further because of the agency relationship between the Employee and Lifetime aided the Employee's ability to direct racially hostile language toward Ser.** As a result, Life Time is vicariously liable for its employee's conduct.

15. Life Time is responsible for the Subject Incident and for the subject acts of their employees through the legal doctrine of respondeat superior.

**16. Moreover, Life Time failed to properly supervise and/or train the Employee which allowed for the Employee to use racially hostile language toward Ser.**

**17. The Employee used the racially hostile language toward Ser while he was on duty, in the course and scope of his tasks for Life Time.**

**18. Given the Employee's employment duties included working with Life Time's customers, including Ser, it was reasonably foreseeable that the Employee, an openly devout racist, could use of racially discriminatory language toward Ser.**

19. After learning of the Subject Incident, Ms. Arias and Mr. Hamlett informed Life Time of its employee's outrageous, obscene, and racist conduct.

20. Life Time refused to take any action in relation to the Subject Incident.

21. After following up with Life Time, Ms. Arias and Mr. Hamlett received no indication that Life Time would address the Subject Incident or clear violations of its own contractual terms and/or internal policies.

22. The Subject Incident caused immense mental anguish for Ser and his parents.

23. Despite his parents fully paying the balance owed each month under the terms of Life Time's form agreement, Ser did not return to Life Time's summer camp for fear of further outrageous, indecent, and obscenely racist conduct from Life Time or its employees.

24. To date, Life Time has refused to refund any moneys to Ms. Arias and Mr. Hamlett in relation to the Subject Incident.

25. On or about September 11, 2023, Plaintiffs' counsel requested that all video evidence be preserved in relation to the Subject Incident. To date, the video evidence has not been provided.

26.     On or about December 4, 2023, Life Time's representative confirmed with Plaintiffs that all video evidence in relation to the Subject Incident has been destroyed. If, in fact, the video evidence has been destroyed, Plaintiffs' case has been irreparably harmed and severely prejudiced.

## FIRST CAUSE OF ACTION

**(Intentional Infliction of Emotional Distress – All Plaintiffs against Life Time)**

27.     Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

28.     On or about July 19, 2023, the Subject Incident occurred at Life Time's Summerlin location, located at 10721 W. Charleston Blvd., Las Vegas, Nevada, 89135.

29.     While attending summer camp, an employee of Life Time called Ser a "monkey" and claimed to "own" Ser. Life Time's employee also indicated that his family previously owned slaves.

30.     After learning of the Subject Incident, Ms. Arias and Mr. Hamlett informed Life Time of its employee's outrageous, indecent, obscene, and racist conduct.

31.     Life Time has refused to take any action in relation to the Subject Incident and has failed to provide any proof of addressing its employee's conduct.

32.     After following up with Life Time, Ms. Arias and Mr. Hamlett received no indication that Life Time would address the Subject Incident or clear violations of its own contractual terms and/or internal policies.

33.     The Subject Incident caused immense mental anguish and emotional distress for Ser and his parents.

**34.     As a result of the Employee's conduct during the Subject Incident, Ser sought mental health counseling and was diagnosed with the following:**

> **a.  Adjustment disorder with mixed anxiety and depressed mood**
>
> **b.  Generalized anxiety disorder**
>
> **c.  Social anxiety disorder**
>
> **d.  Encounter for mental health services for victim of nonparental child psychological abuse.**

/ / /

-5-

35. Life Time recklessly disregarded Ser's immense mental anguish and emotional distress.

36. If granted relief, Plaintiffs' award will prevent the recurrence of Life Time's tortious conduct.

37. If granted relief, Plaintiffs' award will give greater assurance of compensation for the victim.

38. If granted relief, Plaintiffs' award will ensure that the victims' losses will be equitably borne by Life Time, who benefited from the enterprise that caused Plaintiffs' injuries.

39. The Subject Incident caused Plaintiffs' immense mental anguish and emotional distress.

40. The damages caused by Defendants' conduct are in excess of $15,000.00.

## SECOND CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress – Ser against Life Time)

41. Plaintiffs repeats and realleges each and every allegation set forth above as though fully set forth herein.

42. On or about July 19, 2023, the Subject Incident occurred at Life Time's Summerlin location, located at 10721 W. Charleston Blvd., Las Vegas, Nevada, 89135.

43. While attending summer camp, an employee of Life Time called Ser a "monkey" and claimed to "own" Ser. Life Time's employee also said that his family previously owned slaves.

**44. The employee of Life Time described above lacked adequate training/supervision and uttered the racial comments toward Ser in the presence of others within Life Time's facilities.**

45. After learning of the Subject Incident, Ms. Arias and Mr. Hamlett informed Life Time of its employee's outrageous, indecent, obscene, and racist conduct.

46. Life Time refused to take any meaningful action in relation to the Subject Incident and/or accept any responsibility.

///
///

-6-

47.     After following up with Life Time, Ms. Arias and Mr. Hamlett received no indication that Life Time would address the Subject Incident or clear violations of its own contractual terms and/or internal policies.

48.     The Subject Incident caused immense mental anguish and emotional distress for Ser.

**49.     The Subject Incident caused Ser to receive medical treatment as articulated in paragraph 34 above.**

50.     Life Time negligently disregarded Ser's immense mental anguish and emotional distress.

51.     If granted relief, **Ser's** award will prevent the recurrence of Life Time's tortious conduct.

52.     If granted relief, **Ser's** award will give greater assurance of compensation for the victim.

53.     If granted relief, **Ser's** award will ensure that the victims' losses will be equitably borne by Life Time, who benefited from the enterprise that caused **Ser's** injuries.

54.     The Subject Incident caused **Ser** immense mental anguish and emotional distress.

55.     The damages caused by Defendants' conduct are in excess of $15,000.00.

### THIRD CAUSE OF ACTION

**(Breach of Contract – Yamika Arias and Jonel Hamlett against Life Time)**

56.     Plaintiffs repeats and realleges each and every allegation set forth above as though fully set forth herein.

57.     Life Time extended an offer to Ms. Arias and Mr. Hamlett to become members of Life Time's health clubs. Additionally, Life Time offered access to its summer camp for Ser for an additional charge of several thousand dollars.

58.     Ms. Arias and Mr. Hamlett accepted Life Time's offer upon signing Life Time's form agreement.

59.     Ms. Arias and Mr. Hamlett were to receive access to Life Time's facilities, inclusive of Ser's access to Life Time's summer camp **without regard to Ser's race**, **African-American male.**
/ / /

60. Ms. Arias and Mr. Hamlett made each and every payment, as obligated in Life Time's form agreement.

61. On or about July 19, 2023, the Subject Incident occurred at Life Time's Summerlin location, located at 10721 W. Charleston Blvd., Las Vegas, Nevada, 89135.

**62. The Subject Incident was a breach of the parties' agreement to allow access to Life Time's facilities, inclusive of Ser's access to Life Time's summer camp without regard to Ser's race, African-American male.**

**63. The only reason the Subject Incident occurred resulting in a breach of the parties' agreement is because of Ser's race, African-American male.**

64. After the Subject Incident, Ms. Arias and Mr. Hamlett received no assurances from Life Time that Ser would be safe to return to Life Time's summer camp.

65. Ser did not return to Life Time's summer camp for fear of further outrageous, indecent, and obscenely racist conduct from Life Time's employees.

66. Ms. Arias and Mr. Hamlett never bargained for access to a health club that hires racist employees who treat their son in such a harsh manner.

67. Despite breaching its agreement with Ms. Arias and Mr. Hamlett, Life Time has not refunded any money to Ms. Arias and Mr. Hamlett in relation to the Subject Incident. Nor has Life Time taken responsibility for the conduct of its employees.

68. Life Time's breach caused Ms. Arias and Mr. Hamlett's damages.

69. Ms. Arias and Mr. Hamlett's damages from Life Time's breach are in excess of $15,000.00.

## FOURTH CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith**

**and Fair Dealing – Yamika Arias and Jonel Hamlett against Life Time)**

70. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

/ / /

/ / /

71.    Life Time extended an offer to Ms. Arias and Mr. Hamlett to become members of Life Time's health clubs. Additionally, Life Time offered access to its summer camp for Ser at an additional fee.

72.    Ms. Arias and Mr. Hamlett accepted Life Time's offer upon signing Life Time's form agreement.

73.    Ms. Arias and Mr. Hamlett were to receive access to Life Time's facilities, inclusive of Ser's access to Life Time's summer camp wherein Ser's parents paid and additional charge.

74.    Ms. Arias and Mr. Hamlett made each and every payment, as obligated in Life Time's form agreement.

**75.    Implicit in every Nevada contract is a covenant on the part of each party to the agreement to take no steps to prevent the other party from enjoying the benefits of the bargained agreement.**

76.    Defendants breached that agreement on or about July 19, 2023, by committing the conducting described in the Subject Incident above.

77.    Ser did not return to Life Time's summer camp for fear of further outrageous, indecent, and obscenely racist conduct from Life Time or its employees.

78.    Ms. Arias and Mr. Hamlett never bargained for access to a health club that hired racist employees who would treat their son in such a heinous manner.

79.    Despite contravening the spirit of its agreement with Ms. Arias and Mr. Hamlett, Life Time has refused to refund any moneys to Ms. Arias and Mr. Hamlett in relation to the Subject Incident, and Life Time has only addressed the Subject Incident in a cursory manner.

80.    Life Time's breach caused Ms. Arias and Mr. Hamlett's damages.

81.    Ms. Arias and Mr. Hamlett's damages from Life Time's breach are in excess of $15,000.00.

## FIFTH CAUSE OF ACTION

### (Violation of 42 U.S.C. § 1981)

**82.    Plaintiffs repeats and realleges each and every allegation set forth above as though fully set forth herein.**

83.    42 U.S.C. § 1981 guarantees that all persons within the jurisdiction of the United States shall have the right to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

84.    The guarantees set forth above include the making, performance, modification, termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

85.    Defendants have violated 42 U.S.C. § 1981 by the Employee of Life Time using racially hostile, discriminatory language toward Ser as described above in paragraph 10.

86.    But for Ser's race, African-American male, such racially hostile, discriminatory language would not have been used against Ser.

87.    The racially hostile discrimination against Ser prevented him from enjoying the benefits of the contract between the parties, said contract described above.

88.    To that end, for fear of further racially abusive behavior by Life Time employees, Ser did not return to Life Time's facilities despite having performed all the terms and conditions of the contract that he was to perform.

89.    As a direct and proximate result of Defendants' discriminatory conduct in violation of Section 1981, Plaintiffs have suffered and continued to suffer monetary and/or economic damages.

90.    As a direct and proximate result of Defendants' discriminatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer mental anguish and emotional distress including but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

91.    Defendants' conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiffs' civil rights, entitling Plaintiffs to an award of punitive damages.

## SIXTH CAUSE OF ACTION

### (Negligent Training/Supervision)

**92.     Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.**

**93.     Life Time employed the Employee who uttered racially motivated insults toward Ser as described above.**

**94.     Life Time knew or should have known that the Employee was racially hostile toward African-Americans.**

**95.     Despite its knowledge, Life Time failed to train the Employee on the harm caused by racial discrimination and continued to employ the Employee.**

**96.     That as a direct and proximate result of Life Time's failure to train and properly supervise the Employee, he committed racial discrimination against Ser as described in paragraph 10 above.**

**97.     As a direct and proximate result of Life Time's failure to train and properly supervise the employee, Ser suffered economic and non-economic damages; and suffers and continues to suffer mental anguish and emotional distress including but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.**

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.     Judgment against Defendants in excess of $15,000.00 for each of the causes of action above, plus prejudgment interest;

**2.     For punitive damages for Plaintiffs' action under 42 U.S.C. § 1981.**

3.     The cost of this action;

4.     Attorney's fees;

5.     Post-judgment interest from the date of judgment until the date of collection;

6.     Special damages recoverable at law;

7.     Punitive damages; and

8. Such other and further relief as this Honorable Court deems just and equitable.

DATED this 27th day of February, 2025.

PARKER, NELSON & ASSOCIATES, CHTD.


 /s/ Theodore Parker III
THEODORE PARKER, III, ESQ.
Nevada Bar No. 4716
2460 Professional Court, Suite 200
Las Vegas, Nevada 89128

CLARENCE E. GAMBLE, ESQ.
Nevada Bar No. 4268
**RAMOS LAW**
10190 Bannock Street, Suite 200
Northglenn, Colorado 80260

*Attorneys for Plaintiffs,*
*Yamika Arias and Jonel Hamlett,*
*individually, and on behalf of their son,*
*Ser Maddox Hamlett*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP Rule 5(b), I certify that I am an employee of PARKER NELSON & ASSOCIATES, CHTD., and that on this 27th day of February, 2025, I caused the foregoing **AMENDED COMPLAINT** to be served by electronically filing via the U.S. District Court's CM/ECF electronic filing system to all parties currently on the electronic service list.

| Party | Attorney | E-Mail |
|---|---|---|
| Defendant, Life Time, Inc. | Marisa Pocci, Esq.<br>Lilith V. Xara, Esq.<br>LITCHFIELD CAVO LLP<br>3993 Howard Hughes Parkway, Suite 100<br>Las Vegas, NV 89169<br>(702) 949-3100<br>Fax: (702) 916-1776 | Pocci@litchfieldcavo.com<br>Xara@LitchfieldCavo.com |

  */s/ Eloisa Nuñez*
An employee of PARKER, NELSON & ASSOCIATES, CHTD.

-13-